We move to the third case this morning, Marcus Torry v. City of Chicago. May it please the Court. Excuse me, Counsel. I'm sorry. We'll wait until everybody gets out. I'm sorry. Okay. May it please the Court. I'm Irene Dimcaro. I represent the plaintiffs in this appeal. This case involves an illegal stop and detention of three young black men by three white Chicago police officers on September 23, 2014. It's an event that happens dozens of times every day in the city of Chicago. The officers created no police reports. They made no contact cards. This was considered by defendant officers so inconsequential, so trivial, they don't even remember it happening. In the original complaint, we sued unknown officers, and it's only because we had cell phone videos that we were able to identify which officers were involved in this case. Now, the defendants made judicial admissions in response to plaintiffs' request to admit. District Court judge gave them short shrift. They admitted they do not know why they may have suspected plaintiffs were involved in criminal activity. They do not know what they knew about a prior shooting incident. They do not remember any description of suspects or vehicles they may have had. They have no probable cause to believe plaintiffs had committed a crime. Plaintiffs had committed no traffic violations. They don't know if they stopped Torey's vehicle because of a shooting on South Washtenaw. They have no recollection at all of this event. You don't dispute, counsel, that Officer King was aware of the shooting at the time of the stop? He said on the video that there was a shooting in this area, but then in his deposition, when I asked him to tell me about what you knew, he couldn't come up with any information. And in the judicial admissions, they say, and this is supposed to be conclusive and have the effect of withdrawing a fact from contention, he says, I don't remember what I knew about a prior shooting event. I don't remember any description of any suspects or vehicles that I might have had. So the judicial admissions on this Rule 36 is pretty important, I think. And if a party says, this is where I am, I don't recall anything, and I can't give you any information at all, they are bound by that, and they cannot controvert it. So the defendants are arguing, well, if we say we don't remember something, it's nothing. It's neither here nor there. It's not an admission of anything. But if you have no recollection, the Brown v. Cook County case says, parties admitting that the party could not deny a statement on the basis of his own knowledge. That does not mean, though, that you can export extrinsic facts that defendants cannot prove they knew and claim that as justification for the stop and detention of plaintiffs. And that's what the defendants did in their motion for summary judgment. Isn't there something different here, counsel, because of the existence of the video? Because of the existence of the video, we know that at least Officer King knew about the shooting. The video is going to be there regardless. You've got a different argument on these judicial admissions, potentially, if the video didn't exist. But with the video saying that King knew there was a shooting, doesn't that put that in a different category than your argument? I don't think so because when the judicial admissions were made, the video existed and the defendants knew about it. When they gave their deposition testimony and said, we don't recall what we saw the plaintiffs do, we don't even know why we stopped them. When they said that, they knew about the video. Did you ask them in the depositions whether or not they had seen the video? Yes, yes. Had they seen the video? Yes. So their responses in the depositions were exclusive of their viewing of the video. Right. Even with seeing the video, they said, we don't remember this thing happening. Well, there's a video. You've got a video. We're in the video, but we don't remember what happened. And it's really important, even if Sergeant King knows about a shooting incident, he has to have some reason to connect that incident to what he is doing with the plaintiffs four hours later half a mile away. And he says, I don't remember any description. I don't know anything about anything. Now, what the defendants did in their motion for summary judgment is they brought in extrinsic facts. They said, okay, well, look at this police report. And they said, well, the police report, these detective reports, the detective reports are dated. Very important. September 24th, the next day, and October 6th, two weeks later. So what the defendants said in their motion for summary judgment is, look at these detective reports. This must have been what we knew. But they didn't make out the reports. These are not the reports. They're not saying it refreshed our recollection. All they said in their motion for summary judgment is what these reports contain is what we must have known back then. It's pure hearsay. Did you inquire during the depositions whether or not there were any other stops related to the shooting? And if so, where those might have been geographically? I don't think we asked about other stops at the time. And you see why I'm asking the question. With the video, we've got this, at least there's a subtext of possible pretext. You began your argument with the points about the race of the officers and the race of the individuals. And if we're going to discern some attempt at pretext, we've got to figure out why these officers are stopping these individuals. Well, the facts given were related to the shooting. Color of the car, race of the occupants, and then geographic location and time. So these are the connectors that the officers are making for purposes of the reasonable suspicion determination. If we knew more about what was happening that morning, then perhaps we could make a determination with regard to the pretext. Is there any argument you have to offer us on that? Well, I'm a little confused about the question because the video itself, Sergeant King does not say anything about description. He doesn't say you match the description, doesn't say the car matches the description, same number of people, same race. All he says is there was a shooting event. But the argument is made that that's the reason for the reasonable suspicion. Also a gray car, also three African American young males within a half mile of the shooting location and within four hours. That's what I understand the city to be arguing with regard to the basis for the stop. With regard to that, we've got the two videos, right? We've got 13-minute video and the one-minute video when there's an overlap with regard to them. So we're able to get a little bit of a view into what was going on then. If the argument is that the stop itself was pretext and therefore doesn't reach reasonable suspicion, if we knew more about what else was happening that morning, that might be helpful. Is there anything in the record that would tell us the context beyond the videos? I'm not sure how we could obtain that information. The officers themselves said they didn't remember anything at all that morning. They don't remember what they were doing. All we know is what the plaintiffs saw, these three men near their cars at the corner of Polk and Sacramento. And next thing they knew, they were being pulled over. It was because we tried to hunt down what else was happening. We found out about this Washtenaw shooting through discovery because we said, was there a shooting? And that's when we found out about this shooting. King didn't even remember he was actively investigating the shooting? He didn't remember he was investigating the shooting. And I'm not sure he was investigating the shooting. How did that come into the picture then? I don't know. I don't know. It's not an answerable question. If you look at the OEMC report, that they're trying to bring it extrinsically, and they say, okay, this is what we must have known. We must have known everything that's in this report, which is hearsay. The report itself- Well, it's going to be hearsay for you. So nobody said anything about King actively investigating the shooting that occurred that morning? There's no report that says that. No, no. There's an OEMC report that simply says this, and this was put in, and if you look at the report, I've got a copy of it here. It's numbers, it's letters, and you have to know how to read this. And this was just submitted in the motion for summary judgment without any sponsoring witness at all. But what it says is that 1120, it says assist, and then it says 1120 preempted, which means taken off the job. And then it says 1120 change of location. It doesn't say he actually went to the scene. It doesn't say he did anything at the scene. It doesn't say anything. And so for him to say, okay, I'm going to look at this report, and hey, see, look, this is what I must have done. So he couldn't use it to refresh his recollection? He didn't say it refreshes recollection. Well, he may not have said that, but he couldn't do it. But he specifically says, I don't recall the stop. I still don't recall the stop, but there's other evidentiary material that you can look at that would tell you what I knew at that time. But counsel, why is that hearsay? Why is that being offered for the truth of matters asserted? It's not being offered for the truth of the shooting actually happened. I mean, it's being offered to show that there was reasonable suspicion at the time, right? It's being offered to show that there was a shooting. It's the truth of the matter asserted. It's not... Even if there wasn't a shooting, if he had thought there was a shooting, I mean, if that was part of the circumstances that the police knew, then they would have reasonable suspicion to stop, even if, in fact, no shooting had ever happened, if the police was misinformed, right? It depends on how reasonable it is. If there's a mistake, how reasonable it is. Right, but this is just going to the hearsay question. Yeah, I agree. If there's no... If it's outlandish to think that a shooting happened, then not. But if the report is being introduced to show what the officers knew, then it's not being offered for the truth of the matter asserted, which is that the shooting actually happened and that it was actually committed by three African-American males driving a gray car SUV or not, right? Well, in their judicial admissions, they say that they do not know if they stopped Tory's vehicle because of a shooting at 640 Southwest. But this is raised to create the inference that they were on notice, right? They're saying, we can't remember, right? We can't remember. But here is, I was on duty in this area. Here is a call log that shows that this was reported. Therefore, I must have been on notice. That's still not hearsay. They can't import all that information. Why? They can't say, I must have known that. That's the collective knowledge doctrine that we said, you know, just because somebody in the police department... But that's different than the hearsay point. They cannot say, we knew this, if they don't know that they knew it. They cannot look at a report and say, we must have known everything in this report. Right, but that's not hearsay. So you're arguing about the inferences that one can reasonably draw from the report but not about whether the report is actually admissible because they can attach any admissible evidence at summary judgment. Right, but a police report under the Orlowski case is inadmissible hearsay. And this wasn't even a report that they produced. Depending on what it's introduced for, right? It's inadmissible hearsay if it's offered to prove the truth of the matter asserted. Right, and they're not saying they knew that. They're specifically in their appeal still saying, we don't recall the stop, but we're saying, look at these other pieces, these documents, and they will show what we knew at the time. That is pure hearsay. That is looking at something else and saying, look at this, and this is what you'll see. Are you arguing that if they never... Let's imagine that you go to trial and they never can, under oath, say that they remember any detail about the stop. Are you saying you win? I'm saying yes. I am saying that because if they want to refresh their recollection, that's fine. But how can that be right if an honest police officer, who really did have reasonable suspicion at the time, so let's say not this case, let's imagine a case, take it outside of the context of this case, an honest officer has reasonable suspicion, performs a stop, doesn't arrest, and then is later sued but can't remember the incident. He's automatically liable in 1983? I would say yes, and that's why we have contact cards. That's why we have police reports. Police officers are supposed to document what they do, and if they don't do it... That's a shocking claim, though, that he's liable for acting unconstitutionally and you don't have to prove that he acted unconstitutionally if he doesn't have any memory and you have no evidence that he's lying about it? Well, we have the plaintiff's testimony. The plaintiff's testimony is we weren't doing anything. We weren't acting suspicious. We went to an auto parts store, and then we came back and we got stopped. But that doesn't mean that the officer didn't have the fact that you... Let's see. Remember, the officer doesn't have to be right that the person committed a crime or was even a suspect. Whether there is reasonable suspicion or probable cause always turns on the facts and circumstances known to the officer who could be wrong, right? So the fact that the plaintiffs say we weren't innocent and we weren't doing anything, which it seems is true in this case, wouldn't mean that they would automatically win this Fourth Amendment claim. I think this is a question for the jury. We have the plaintiff's story of what happened, where they're not doing anything suspicious. They're not criminal. They're not gangbangers. They don't have criminal records. Well, they're not describing whether they were suspicious or not. It's the police concerned whether they're suspicious not whether they thought they were suspicious. Well, and we're saying that the police cannot substantiate that they thought that they were suspicious. The district court found, for example, that King was actively investigating the shooting. You just said you didn't know he wasn't. The judge looked at his affidavit, and that gets to the point of Sergeant King's affidavit. His affidavit contradicts his judicial admissions and it contradicts his deposition testimony. You can't do that. You can't walk in at the time of a motion for summary judgment and just say, okay, I'm going to restate the whole case. Yes, I made these admissions, and yes, I testified in my deposition, but in my affidavit I'm going to say something different. And that's what the judge is quoting, Your Honor. What are we doing about the judge's finding? Are we just throwing them away? I think the judge was wrong. I think the judge was wrong in his findings. And what the judge relied on were those three documents, the police reports, the post-date of the event, the OEMC report that is being imported in, and the Sergeant King's affidavit. You can't at the point of motion for summary judgment bring in an affidavit and contradict what you said in your judicial admissions and contradict what you said in your deposition. Oh, you can. Well, it's up to Your Honors to determine if that can be done. Correct. I thought in the judicial admissions you said he had no independent knowledge. But was the affidavit directly contrary to that? I thought that the affidavit simply said I must have been investigating this and that the district court's findings were based on the objective evidence of the video testimony that your clients had taken at the time of the scene as well as the police reports, right? The affidavit says I still don't remember anything. So it doesn't contradict the judicial admission. But they said you have to look at all these documents. But then what the district court did was adopt those facts in those documents, and that's what we're saying you can't do. Why? The police officer either remembers what he heard or what he didn't hear. He either remembers what he saw or what he didn't see. And if he doesn't, he can't say if this was a report prepared by the police officer and it was I knew it then, I recorded it then, and now I don't remember. But there could be circumstantial evidence. Circumstantial evidence is admissible. It raises an inference of what he knew. These are reports that are hearsay. They're other officers. And even the police reports are after the fact. They're the day after and they're two weeks after. If they're not hearsay, do you lose? Because I don't think they're hearsay. Okay, I think that they are hearsay, Your Honor. And I know we don't lose because he didn't know that at the time. It's all what was in the officer's mind at the time he pulls over the plaintiffs. And if he can't articulate that, he can't articulate that at a deposition in his judicial admissions, he can't articulate it, then, yes, the plaintiffs would win at that point because their story then, or I would say not win, it has to go to a jury. Plaintiffs say one thing, defendants say another thing, and it's up to the jury to decide. Were they just going to the auto parts store? Did they pass by? Were they cruising? Were they gangbangers? Who bears the burden of proof here in showing that the officers did not think that they had reasonable suspicion to pull over your clients? It's a plaintiff's burden. Right. Yes. But all the evidence that you're referring to is what the plaintiffs knew at the time. Right? So the plaintiffs still have to explain why there was no reasonable suspicion insofar as the officers knew. Well, we brought the motion for summary judgment, and at that point we had the judicial admissions and the deposition testimony, which was a complete washout. I mean, they said we don't remember anything, we don't know anything. And so we said, well, then we should win. We brought a motion for summary judgment. And then what happened was they also brought a motion for summary judgment, and at that time they brought in an affidavit. They brought in the affidavit as part of their reply to their brief. It wasn't part of their statements of fact to begin with. They brought in it as part of their reply. They brought in an affidavit, and they brought in all these documents saying, look at these documents, this must be what we know. Are you saying it was improper to bring it in as part of the reply? Yes. Yes. We're saying procedurally this was wrong what they did. From motion for summary judgment you're not supposed to bring an affidavit in that contradicts your judicial admissions, contradicts your deposition testimony, brings in extrinsic information saying this is what I must have known. It's too little, too late. And they did it as part of their reply instead of their motion. It's not even part of their statement of fact. It's just this freestanding affidavit of the sergeant with these documents, and that's improper. So then is it a question for the jury? This is summary judgment. Is it a question for the jury? Do they believe the plaintiffs? Do they believe the defendants? And that's all we want is a trial. That's what we're asking for here. Ms. Dimkar, why then, if you were successful, on the portion of the illegal search count and the portion of the failure to intervene count, were those dismissed with prejudice? We did that so that we could get to the appellate level. We thought that those were not as strong because the police officers actually did not go into the car. They searched visually. They searched the car. They didn't go into the car. And the search of the person was going into the waistband. We thought that those were the more minor claims. Frankly, we just wanted to get up in front of you on what we thought were the major claims, which is, you know, why were they stopped and why were they detained? And for the police to say, you are in custody, I think that means you're in custody. So police officers cannot just stop on a hunch. They have to have something more than that. Hence my earlier questions. If we're trying to get at why the police officers were stopping your clients who are in the back of the gallery here, the courtroom, why? We would want to know what other things the police officers were doing that morning. Who else they stopped, where they stopped them, why they stopped them. In response to my earlier questions, you did indicate those questions weren't asked. Okay, we asked for something called a beat query, and that is a query of the activity of the beat that day. The only time they signed on with their computer was for a traffic stop. And for the traffic stop and for they said that they were doing a change of location that morning for Sergeant King. But we couldn't find out what they did, and they had no recollection. They had no recollection of this event, and they didn't recollect anything else. So if police officers are not going to make reports and are not going to do contact cards, they can stop 100 people, and you're never going to be able to trace what they did that morning. And that's the problem here. It's a problem that is omnipresent in Chicago, and it affects a lot of young black men where they get stopped for no reason. And at least one thing you probably noticed from the video, it was quite upsetting to Marcus Torrey that this happened. He said, it keeps on happening to me, you know, and you can't even go to an auto parts store and not be stopped. If we were to go your way, what does your damages case look like? The damages are, well, 1983 damages are always emotional. In this case, there was no physical, no hospital bills or anything. So it would be asking the jury to assess what the pain and suffering is of three young black men being pulled over, and they could tell about their history of this happening before. And what the emotional effect was on them. There's also a possibility of punitive damages. So, you know, these would be things we'd be bringing up to the jury. But I guess I want to make sure that Your Honor doesn't think this is a trivial case because, yes, no one got shot, no one got tasered, no one got maimed. But it's so important that the police be able to articulate why they stop people and not just do it and then afterwards try to piece it together or not even care afterwards. Make fun of the plaintiffs, which is what they did. This was a month after Michael Brown was shot. So that was on these young men's mind. Well, that's the whole thing, the Ferguson issue, the shooting and so forth. But, in fact, there was some apparently dispute among themselves, right, when they left, about who was going to go with who. Well, Latrell Goss testified at his deposition the police officer ordered him into the car. He got into the car and then they proceeded to follow Marcus Torrey's car. And we described what happened. They turned off the dash camera and said, we're going to mess with him again. And so I'm not sure if they answered your question or not. Latrell Goss was testifying. We're forcing you to continue on. Your time is long gone. I know, and I appreciate being given the extra time. Thank you. Will there be time for a rebuttal or not? I'll give you a minute for rebuttal. Okay. Thank you. Good morning, Your Honors. May it please the Court. Your Honors, everything the officers did in this case was reasonable. They stopped plaintiffs because they matched the description of suspects in a shooting that occurred that morning just four blocks away, and because they appeared to be casing Manly High School. They detained plaintiffs for less than 13 minutes to ask for their identification, run warrant checks, and question them. They placed Torrey in the patrol car for only eight minutes because they reasonably believed that he may be armed. Counsel, let me interrupt and ask exactly. Sure. The plaintiff's point is that the officers had no memory of this, and it is obviously true that stopping black men is a problem, right? Right. I think the plaintiffs are absolutely right to want this practice to stop, but the question in this case is whether they can carry their burden of proof against these officers. We don't know exactly what happened here. Given that the officers had no memory of what happened, walk me through exactly what the evidence was that showed there was reasonable suspicion. Sure. Exhibit M, I think, is the. Sure. So starting with the video. So we do have the two videos, as you recognize, the longer one, which is the more probative one, and that was taken on Plaintiff Torrey's cell phone video. So on that video, Torrey specifically asked Sergeant King why he's being pulled over, and it's around the two-minute mark. Sergeant King responds, this was the immediate location of a shooting this morning. Or in particular, he says, you were seen cruising the street around the school, it's a safe passage zone, and it's in the immediate location of a shooting this morning. Then we have this Office of Emergency Management and Communications event query, which I do want to note, was properly admitted and authenticated by a supporting affidavit from Sergeant King. And it was also, while it was submitted in defendant's reply brief on their motion for summary judgment, it was actually also attached in their response to plaintiff's motion for summary judgment. And when it was attached in the reply brief as well, it was in response directly to a point raised by plaintiffs in their responsive brief. So there was no question that this document, this event query was properly admitted, both in the procedure of how it was admitted and then in that it was supported by an affidavit from Sergeant King, who was indeed qualified to interpret the information in that document. And plaintiffs had an opportunity to address the document. Summary judgment wasn't entered. And they did in fact address that particular document, which the court had an opportunity to consider on both motions for summary judgment. In that OEMC event query, it contains all the details of the shooting that occurred on Washtenaw Avenue that morning. It indicates that there was a shooting, I think it was around 839 a.m. It also indicates that Sergeant King responded as an assist vehicle at 846 a.m. that morning to that shooting. It indicates that at 851 a.m. Sergeant King changed location to the victim's address on, I think it was Flournoy Avenue. And it was at this time that the witness, or the victim reported that the suspects were described as three African-American males driving a gray vehicle, like plaintiffs here. We also have these other Chicago Police Department supplementary case reports, which were indeed prepared after the fact. Before we get there, while we're on the topic of reasonable suspicion, repeatedly Mr. Torrey says, I've not been by here three times. He makes it very clear that this is not three times, and that would be a fact that would go to this allegation of casing. If he's picking up Mr. Goss, I believe it is, to get the part and then bring the part back to the car, isn't that only two times? Is there any basis in the record for the officer's statement that he saw the car three times and not two times? No, Your Honor. There's nothing in the record at this point to support Sergeant King's statement that he believed they had passed three times. And we, of course, don't know if he did, in fact, see a gray vehicle pass three times, thinking that it might have been the same vehicle, which is certainly possible. But we did agree with plaintiffs in our brief that it was two times that they passed, on the way to the auto parts store, and probably roughly ten minutes later on the way back. This litigation started about a year later, right? The initial complaint. Correct, Your Honor. So recollections, at that point, are at least a year back when the incident occurred. Correct, Your Honor. And it's certainly possible that, or let me return for a moment to walking through this evidence that we have so I don't get off track with explaining what connects the statement on the video that there was a shooting to these particular plaintiffs as being the suspected perpetrators of the shooting. So as I mentioned, we have this Office of Emergency Management Communications event query, and that was what places Sergeant King at the scene of the shooting, and with the victim describing those, that the suspects were three African American males in a gray vehicle, which matches the description of the plaintiffs. What was the document you just described? That was the Office of Emergency Management and Communications event query, and that was submitted with the supporting affidavit from Sergeant King. That was Exhibit M? Right, I believe it was Exhibit M, and it's also Document 81-1 in the record, Your Honor. And as well, in Sergeant King's affidavit, based on his training and experience as an officer and using these types of documents and his familiarity with how these documents are produced, he was able to interpret the information in that document. So we feel that this document is both admissible as a business record with that supporting affidavit properly admitted by Sergeant King, but also as Your Honor pointed out, it's also admissible as non-hearsay, because it was not going to the truth of whether the shooting occurred, and you're correct that we don't really need to prove that the shooting ever actually occurred. We only need to show that Sergeant King reasonably believed that there was a shooting. And indeed, this document would show that if he had responded as an assist vehicle to a report of a shooting where the victim described the suspects as three African-American males in a gray vehicle, it would be reasonable for him to be on the lookout for those suspects. Well, you can't really, it seems to me, tricky to rely on the business record exception here because it's a police record, and isn't it the case that police records are subject to different rules and business records is a little trickier here? That may be, Your Honor, but I think what's important is that as you pointed out, we're not using this document to show that the shooting actually did occur. We're only using it to show that Sergeant King had reasonable suspicion to believe that these plaintiffs may have been the perpetrators of a shooting that was reported, whether that shooting actually occurred or not is irrelevant at this point. Can you address the plaintiff's argument that the affidavit contradicts the judicial admissions? Sure, Your Honors. And we don't believe, or the officers when they admitted that they didn't remember anything, they were saying they had no independent recollection of either the stop or the shooting that perpetrated the stop. So they're not saying that this never could have happened because we don't remember it. They're not saying plaintiff's version of the events could never have happened a certain way. All they're saying is that upon, and they're not even saying that the documents necessarily refresh their recollection. They're just saying we don't remember this, but we have a video and on the video I said I stopped these individuals because there was a shooting. They're also saying we have these documents, this event query from the Office of Emergency Management and Communications. We have this, these supplementary reports from the Chicago Police Department, and all these documents say is that there was a shooting. Sergeant King was responding to that shooting and was aware of the description of the suspects. So they're never saying that they haven't changed their stories, so to speak. They've always maintained that they don't have an independent recollection of the incident. So they've done nothing to contradict any of their judicial admissions, and they've never said anything that could be interpreted as speculative in any way. All they've done is review the evidence, explain what it says based on their training and experience in interpreting these documents. And the documents themselves are what provide the link to the, link between the stop and the shooting. Well, there are other factors, too. There's been a spike in aggravated batteries, gang, things in that area. Yes, you're right. Correct. But that's, let's continue on this idea of the reasonable suspicion. It's clear from the videos being shot that Mr. Torrey at all are not driving an SUV. You can tell that from the angle out of the window. Correct, Your Honor. If Sergeant King at the time was apprised of information about individuals who may be related to the shooting, and he finds out three African American males in a gray SUV, there's no allegation that it could have somehow been these individuals who swapped out their car, right? When does the SUV fact come in? So the SUV comes in when, there are multiple different reports. So there were reports from the victim. There were other witnesses as well. And the initial, in the OEMC event query at 851, which is the time that Sergeant King was, had changed location to the victim's address, it states that the victim reported a newer model gray Nissan. Then we have later, or I should say other, because some of these don't actually have time stamps, but we have other reports. We have a gray trailblazer. This is from the victims of the shooting? This is from the victim and possibly other witnesses, Your Honor. All right. And then we also have a report of a Nissan SUV. So the idea was that this car may have people in retaliation, or what was the basis for the stop? So the basis for the stop was both that the victims, I'm sorry, the plaintiffs matched the suspects of that shooting. And while it's been inconsistent, the make and the model of the vehicle, what has been consistent in the reports from the victim and witnesses is that it was gray. So essentially the officers would have been on the lookout for a gray vehicle. In addition to that, this idea that they may have been casing the school. Sergeant King saw them pass by at least twice, possibly three times he may have been mistaken. So that goes to this idea that there may have been some further retaliation related to that shooting, which, again, the officers testified to based on their knowledge and experience, their training and experience as officers, that that can be what this type of casing activity may be signaling. So we have those two components of this stop to form the basis of the officer's reasonable suspicion. Let me ask you a question about reasonable suspicion and burdens. So a big part of the plaintiff's case is the lack of independent recollection by the officers and then the risk that that would permit these kinds of unwarranted stops and the police not being held accountable for it. So if there is no independent recollection and you don't have on the video King saying there was a shooting, this is a safe passage zone, et cetera, who bears the burden? So when I asked the plaintiff if the officers, if you had an honest officer who truly had had reasonable suspicion and then you bring a lawsuit saying, hey, you stopped me with that reasonable suspicion, the plaintiffs say they win. What does the plaintiff have to show? Tell me how you think the burden plays out here. So the burden would still be on plaintiffs to prove that the officers lacked reasonable suspicion, and this court has consistently held that. And the plaintiffs could, as they did here, go through discovery and obtain documents trying to flesh out what actually happened that morning. So we may not have had, without the video, a specific statement from Sergeant King saying this is why I stopped you. And it may even be possible that even if the officers remembered the stop, they might not specifically remember what their justification was. The plaintiffs might not remember what the justification was. So we won't always have a clear picture of what the officers had in their minds at the stop. But this is why this court has always held that it's an objective standard. And so we don't need to know what was actually going on in the officers' minds at the time of the shooting or, I'm sorry, at the time of the stop. So all that plaintiffs would need to show was that there was nothing that an officer in that position would have known, maybe proving that there was no other crime that had happened that morning in that area and that there was nothing linking, no crime that had suspects that matched plaintiffs. That's not quite right. I mean, it's true that the standard is objective and not subjective. But if the plaintiffs could show that King had no idea that there was a shooting, even if there really had been a shooting, then a reasonable officer in his position wouldn't have had reasonable suspicions. So if they could show that he lacked any knowledge of the shooting or the gray car or the three African-American males who were described, that would be a different story. Of course you're on it right. And that's why what my point on that sort of objective standard would be is that plaintiff has stated time and again that we don't know what was in Sergeant King's mind. And how can we allow officers to hide behind their lack of memory? But all we need to know is what the documents show Sergeant King or other reasonable officers in that position would have known. And we do have documents here, which as plaintiffs acknowledge, they did bring out through discovery, which they have every avenue to do, even when the officers don't remember what occurred. So as long as those documents show that Sergeant King or whichever officer was on the scene at that time had knowledge of criminal activity and had knowledge that the suspects of that criminal activity matched the description of the suspects of that criminal activity, then that would be sufficient to support reasonable suspicion. Under that logic, he could have stopped any three black males. If the casing falls away and the SUV connection falls away, he can't do that. That would be completely improper and constitutionally violent, right? So is your question, Your Honor, that if we didn't have the link between the gray vehicle? Assume he knows about the shooting. But if he knew the gray vehicle was an SUV and not what Mr. Torrey was driving and there really wasn't a casing because it wasn't three, it was twice, doesn't the reasonable suspicion chip away? If plaintiffs could show that the only description of the vehicle was that of an SUV and that we could say, okay, Sergeant King obviously knew that he was on the lookout for an SUV, it's quite possible that the reasonable suspicion, it would be a closer question. But this is a case where there wasn't a clear statement that it was an SUV. We have conflicting accounts of witnesses. The only consistent point was that it was a gray vehicle. And to your point about the casing as well, Your Honor, indeed seeing them pass twice rather than three times does make the point on the casing a closer question. And it's certainly possible without the addition of the shooting that morning or Sergeant King's knowledge of the shooting, the casing alone, it's a closer question on whether that would support reasonable suspicion. But we do have the documents showing that Sergeant King was aware of that shooting, had indeed responded to that shooting, and that he was aware to be on the lookout for three African American males in a gray vehicle. Thank you, Counsel. If there are no further questions, we ask this Court to affirm the District Court's grant of summary judgment to the officers. Thank you. Thank you. You have a minute. I know, I only have a minute. But Sergeant King's affidavit, he says, the victims of that shooting reported that the offenders were three African American males driving in a gray vehicle. He said, based on my knowledge and experience as a police officer, when this information is obtained from victims, it's conveyed to police officers and also via OEMC. So he said, I must have known it. This was on the OEMC report, so I must have heard it. I must have heard it. It must have come over the dispatch. And that's just a leap that can't happen here. A police officer has to say, I knew it. I heard it. I knew it. I had a description. And not after the fact, a year or two later or even longer, looking at an OEMC report and saying, well, this is what I must have known. The OEMC report does not say that Sergeant King was at the scene. It says it gives a change of location. It does not say that he did anything at the scene or even that he arrived. There's no code there for on scene, that he's at the scene. There's no indication that he was actually at the scene. So everything's being said after the fact. I do want to say something about spike of events. The only person who said that was Officer Leah. He said there's been a spike of violence in this area. And at his deposition I said, what are you talking about? Give me one instance where there has been an aggravated battery or aggravated assault. He couldn't think of one. I said, is there anything you've investigated or heard of or anything? He couldn't come up with even one example. So for him to say there's been a spike in that area, he's the only person who said that, and I think it was debunked during his deposition. Thank you. Thank you. Thank you, Counsel. And the case is taken under advisement.